UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| NIKKI OLIVER, as Parent, Legal Guardian, and Next Friend of H.J., a minor, and PHILIP JOURNAGAN,<br><br>Plaintiffs,<br><br>-vs-<br><br>PROGRESSIVE DIRECT INS. CO.,<br><br>Defendant. | Civil Action No. 4:24-cv-5034-JD-TER<br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

## I.  INTRODUCTION

Plaintiff Nikki Oliver originally filed this declaratory judgment action in the Court of Common Pleas, Chesterfield County, South Carolina. Defendant Progressive removed this action to this court asserting jurisdiction is proper pursuant to 28 U.S.C. § 1332.[1] Presently before the Court is Defendant's Motion for Summary Judgment (ECF No. 19). Because Journagan is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion could result in the motion being granted and his claims dismissed. Oliver filed a Response (ECF No. 24); Journagan did not. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C.

---

[1] Oliver initially named Journagan as a Defendant in this action. Both Oliver and Journagan are domiciled in South Carolina. At the time of removal, Progressive moved to realign the parties so that Journagan, the minor's father and the named insured under the insurance policy issued by Progressive, was a plaintiff rather than a defendant, arguing that "Journagan has a direct pecuniary interest in the potential outcome that is aligned with [Oliver] and adverse to Progressive." Motion to Realign p. 1 (ECF No. 4). The Court found that "[a] ruling for Plaintiff would expand Journagan's coverage under his policy to provide more coverage for any property damage or potential exposure he incurred in the subject motor vehicle collision and any other losses he may have experienced. Accordingly, the parties should be realigned by their respective positions on coverage. Journagan is, therefore, designated a plaintiff, establishing complete diversity." Order (ECF No. 9).

1

636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(e), DSC. This Report and Recommendation is entered for review by the District Judge.

II.   FACTS

On August 19, 2013, Journagan applied for an auto insurance policy with Progressive. Insurance Application (ECF No. 19-2). The application reflects a discount for obtaining the quote online, but Journagan testified at his deposition and via an affidavit that he obtained the Policy over the phone. Journagan Dep. 26-28 (ECF No. 23-1); Journagan Aff. ¶ 3 (ECF No. 19-7). The application sought liability coverage of $25,000 per person and $50,000 per accident for bodily injury and $25,000 per accident for property damage. Insurance App. The application indicates that Journagan rejected Underinsured Motorist (UIM) coverage. Insurance Application.

Following the phone call to start the application process, Journagan received an email requesting that he e-sign paperwork to complete the application. Journagan Dep. 28-29. Through the link provided in the email, Journagan was given the opportunity to review and sign certain required forms, including the UIM selection/rejection form. He e-signed the documents by typing his name and giving Progressive permission to add his signature on the forms. Journagan Dep. 29-30; Ortiz Aff. ¶¶ 8–9 (ECF No. 19-4). Journagan repeatedly states in his deposition that he executed each of the forms, including the UIM Selection/Rejection form, which indicated that he rejected UIM coverage, by adding his electronic signature. Journagan Dep. 29, 40-41, 44-45, 46-47, 79, 80-81; see also Ortiz Aff. ¶¶ 9, 12–15; UIM Selection/Rejection Form (ECF No. 19-5). However, he also repeatedly states that he was not offered UIM coverage during the phone call he placed to begin the application process and, thus, could not have rejected it. Journagan Dep. 33-34, 41-42, 45, 48, 53-54, 59, 74, 79-81, 96. He testified that he was relying on the Progressive

2

adjuster he spoke with on the phone to advise him regarding the coverage he needed to be "fully covered." Journagan Dep. 91-92. When questioned by Plaintiff Oliver's counsel, Journagan testified that he did not recall rejecting the UIM coverage or electronically signing the UIM Selection/Rejection form when he first purchased the policy or any time he renewed his policy. Journagan Dep. 88, 90-91, 94-97. In an affidavit executed before his deposition, Journagan states that he did not sign the UIM Selection/Rejection form, he was not advised over the phone that he could choose to purchase UIM coverage, and, if he had been so advised, he would have purchased it. Journagan Aff. ¶¶ 5-7 (ECF No. 19-7).

Following Journagan's completion of the documents, Progressive issued Policy No. 35277086 (the Policy) to Journagan. Declarations Page (ECF No. 19-6).

On May 18, 2023, H.J. was involved in an accident and sustained injuries. (Pl.'s Compl. ¶¶ 8–11). The Plaintiffs have filed a claim for UIM benefits under the Policy arising out of this accident and seek a declaration that such coverage is owed under the Policy. Progressive asks this Court to hold that the Policy does not contain UIM benefits and cannot be reformed.

### III.    STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, the moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. <u>Id.</u> Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party

3

bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kirkwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### IV.   DISCUSSION

In South Carolina, insurers must "offer, at the option of the insured, [UIM] coverage up to the limits of the insured liability coverage." S.C. Code Ann. § 38–77–160 (2015). The South

Carolina Supreme Court has held that "the statute mandates the insured to be provided with adequate information, and in such a manner, as to allow the insured to make an intelligent decision of whether to accept or reject the coverage." State Farm Mutual Automobile Insurance Co. v. Wannamaker, 291 S.C. 518, 521, 354 S.E.2d 555, 556 (1987). In other words, the offer of UIM coverage must be "a meaningful one." Id. at 522, 354 S.E.2d at 557. "If the insurer fails to comply with its duty to make a meaningful offer, the policy will be reformed by operation of law to include UIM coverage up to the limits of liability insurance carried by the insured." Ray v. Austin, 388 S.C. 605, 611, 698 S.E.2d 208, 212 (2010) (citing Butler v. Unisun Ins. Co., 323 S.C. 402, 405, 475 S.E.2d 758, 760 (1996)). The Wannamaker Court set forth four requirements for an offer of UIM coverage to be valid:

> (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

Id. at 521, 354 S.E.2d at 556 (citing Hastings v. United Pac. Ins. Co., 318 N.W.2d 849 (Minn.1982)).

"After Wannamaker, the General Assembly enacted section 38–77–350 of the South Carolina Code as a safe-harbor provision, creating a conclusive presumption of a meaningful offer of UIM coverage under certain conditions." Traynum v. Scavens, 416 S.C. 197, 202, 786 S.E.2d 115, 118 (2016) (citing Ray, at 611, 698 S.E.2d at 212 (noting that compliance with section 38–77–350 creates "a presumption that a meaningful offer of UIM coverage has been made"). Subsection (A) requires the Department of Insurance (the Department) to promulgate a form for insurers to use when making the required offer of optional coverages to new applicants, which

must include

>   (1) a brief and concise explanation of the coverage;
>
>   (2) a list of available limits and the range of premiums for the limits;
>
>   (3) a space to mark whether the insured chooses to accept or reject the coverage and a space to state the limits of coverage the insured desires;
>
>   (4) a space for the insured to sign the form that acknowledges that the insured has been offered the optional coverages; [and]
>
>   (5) the mailing address and telephone number of the insurance department that the applicant may contact if the applicant has questions that the insurance agent is unable to answer.

S.C. Code Ann. § 38–77–350(A). Subsection (B) states,

> If this form is signed by the named insured, after it has been completed by an insurance producer or a representative of the insurer, it is <u>conclusively presumed</u> that there was an informed, knowing selection of coverage and neither the insurance company nor an insurance agent is liable to the named insured or another insured under the policy for the insured's failure to purchase optional coverage or higher limits.

S.C. Code Ann. § 38–77–350(B) (emphasis added). In <u>Traynum</u>, the South Carolina Supreme Court recognized that "an insurer can establish it made a meaningful offer of UIM coverage by proving <u>either</u> it is entitled to the conclusive presumption of section 38–77–350(B) or it satisfied the requirements of <u>Wannamaker</u>." <u>Traynum</u>, 416 S.C. at 203, 786 S.E.2d at 118 (citing <u>Ray</u>, 388 S.C. at 612, 698 S.E.2d at 212 ("Even where the insurer is not entitled to the statutory presumption that a meaningful offer of UIM coverage was made, the insurer can still demonstrate that a meaningful offer of UIM coverage was made to the insured under <u>Wannamaker</u>.")).

Plaintiff Oliver does not dispute that the form used by Progressive meets the requirements set forth in § 38-77-350(A).[2] Rather, she argues that an issue of fact exists as to whether the

---

2 In her response to Progressive's motion, Plaintiff states briefly, without elaboration, that Progressive never made a

electronic signature on the UIM Selection/Rejection Form is valid. "To establish that evidence is authentic, a proponent need only present 'evidence sufficient to support a finding that the matter in question is what the proponent claims.'" United States v. Vidacak, 553 F.3d 344, 349 (4th Cir. 2009) (quoting Fed. R. Evid. 901(a)). "[T]he burden to authenticate under Rule 901 is not high—only a prima facie showing is required," and a "district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." Id. Under the South Carolina Uniform Electronic Transactions Act (SCUETA), "[a]n electronic signature satisfies a law requiring a signature." S.C. Code Ann. § 26-6-70(D). The SCUETA further provides that an "electronic signature is attributable to a person if it is the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of a security procedure applied to determine the person to which the electronic record or electronic signature was attributable." S.C. Code Ann. § 26-6-90(A) (emphasis added). "Some courts have found the declaration of the human resource employees sufficient to authenticate electronic signatures," while others "have focused on the factual circumstances surrounding the purported signature." Gordon v. TBC Retail Grp., Inc., 2016 WL 4247738, at *6 (D.S.C. Aug. 11, 2016) (internal quotation marks omitted) (applying South Carolina law). Here, the factual circumstances surrounding Journagan's electronic signature, about which Journagan himself testified, as well as the affidavit testimony of Anna Ortiz, an Insurance

---

meaningful offer of UIM coverage at any point during the last eleven years. Journagan states more than once in his deposition that he was never offered UIM coverage, presumably during his phone conversation with a Progressive representative.  There is no requirement that an offer for UIM coverage must be made orally to be "meaningful." Further, the South Carolina Supreme Court has made clear that a meaningful offer can be shown either by meeting the factors set forth in Wannamaker or by making an offer on a form that complies with S.C.Code Ann. § 38–77–350(A). As stated, Plaintiff does not dispute that the form used by Progressive meets those requirements. Further, Anna Ortiz, an Insurance Litigation Representative for Progressive, avers that the form used by Progressive matches the form approved by the South Carolina Department of Insurance for use by insurance companies to obtain the selection or rejection of UIM coverage by insurance applicants. Ortiz Aff. ¶ 9.

Litigation Representative with Progressive, are sufficient to meet Progressive's burden of showing, in "any manner," that the signature belongs to Journagan. First, Journagan repeatedly testified in his deposition that he provided his electronic signature by typing in his name in the box provided at the link sent to him via email:

> Q: All right. The last subheading says signature of named insured?
> A: Yes.
> Q: And do you see your name is typed out there in lowercase?
> A: Yes.
> Q: And it has a date on it?
> A: Yes.
> Q: Is that how you typed in your name to authorize this signature on the document?
> A: Yes.
> Q: That's how you did the e-sign?
> A: Yes.

Journagan Dep. 41. Journagan then confirmed that he followed the same procedure for the UIM offer form:

> Q: Okay. So what I'm saying is on this document, Exhibit 1A [UIM Selection/Rejection Form], where we've seen your name typed in under your signature on page three, and it's also going to be on page four and five, that you e-signed this document the same way you e-signed Exhibit 1, the application?
> A: Yeah, but I was never offered that part of the --
> Q: In the phone call?
> A: In the phone call.
>
> * * *
>
> Q: But you did sign the documents, both Exhibit 1 and Exhibit 1A, by typing in your name?
> A: Yes.

Journagan Dep. 45.

And again a few moments after that:

> Q: Okay. But the form itself, you signed it electronically by the method we talked about earlier?
> A: Yes.

8

Journagan Dep. 47. He admits, however, that he only "breezed through" the UIM Selection/Rejection document and "didn't read it 100%." Journagan Dep. 41-42. His failure to thoroughly read a document prior to signing it does not absolve him of being bound by the terms of the document. See Burwell v. S.C. Nat. Bank, 288 S.C. 34, 39, 340 S.E.2d 786, 789 (1986) ("As early as 1924, this Court recognized that every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it.").

In her affidavit, Ortiz sets forth the manner in which online applicants electronically sign documents required for issuance of an insurance policy:

> 10. The web page in which the Offer Form[3] appeared contained the instruction "Please read and sign below by entering your name in the boxes provided." It asked him to "Please sign" the forms by typing his first and last name exactly as they appeared below the signature boxes. The policy could not be issued until Journagan placed his electronic signature on the Offer Form.
>
> 11. Because the electronic version of the Offer Form within the Adobe frame is unalterable, Journagan's typed name and the typed date already appeared in the signature line of each form to be signed.[4] For our electronic forms, a signature block is presented below the frame on each web page containing a signature box to accommodate the customer's electronic signature. The wording adjacent to the signature block states as follows:
>
>> I represent that I am the person whose name appears on the signature line of the document presented above, that I viewed the document at the recommended browser resolution and Adobe view size. I acknowledge and agree to the statements, terms, and conditions in the document above and that by typing my name below and clicking "Continue," I am electronically signing the document, which will have the same legal effect as the execution of the document by a written signature and shall be valid evidence of my intent and agreement to be bound. I understand that if I do not electronically sign each document presented during the online session, the

---

3 "Offer Form" as used by Ortiz refers to the "Offer of Additional Uninsured Motorist Coverage and Optional Underinsured Motorist Coverage" form. Ortiz Aff. ¶ 8.
4 [Footnote 2 in the Affidavit] Even though the customer's name is pre-populated onto the signature line of the .pdf form, if the customer does not agree to and then sign the form electronically, the policy is not issued, and the form is not saved.

9

>   application will not be effective and no insurance coverage will result.

Ortiz Aff. ¶¶ 10-11. Journagan's description of how he signed the documents is consistent with Ortiz's explanation of how electronic signatures are captured for forms completed online. This evidence is sufficient to meet Progressive's prima facie burden of showing that the electronic signature on the UIM Selection/Rejection Form belongs to Journagan.

Plaintiff has not provided sufficient evidence to meet her burden of overcoming Progressive's prima facie showing of a valid electronic signature. Journagan testifies repeatedly that he added his electronic signature to the UIM Selection/Rejection Form. His later deposition testimony that he did not "recall" rejecting UIM coverage is not necessarily inconsistent with that testimony, given his other testimony that he "breezed through" the UIM Selection/Rejection Form and "didn't read it 100%." Journagan Dep. 41-42. A failure to recall certain events does not create an issue of fact. See, e.g., Kemp v. United Parcel Serv., Inc., No. CV 1:14-4840-JMC-KDW, 2016 WL 11397837, at *10 (D.S.C. Apr. 18, 2016), report and recommendation adopted, No. 1:14-CV-04840-JMC, 2016 WL 5539517 (D.S.C. Sept. 30, 2016) ("Similarly unavailing is Plaintiff's reliance on his deposition testimony that he did not recall receiving a letter or any discipline in November 2010. Plaintiff's failure to recall a particular discipline does not create an issue of fact.").

Additionally, the affidavit signed by Journagan prior to his deposition does contradict his deposition testimony because he states specifically, "I did not sign the rejection of UIM (underinsured motorist) coverage that has been provided by Progressive to my son's attorney." Journagan Aff. ¶ 5. As held by the Fourth Circuit, "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's

testimony is correct." Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984). In Barwick, the Court reasoned that "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id. (quoting Perma Research and Development Co. v. The Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)). Though, here, the affidavit was signed before Journagan's deposition, the reasoning is the same. Upon thorough examination at deposition regarding Journagan's use of his electronic signature with respect to his insurance application, including the presentation of the specific UIM Selection/Rejection Form at issue, Journagan testified that he did add his electronic signature to the document. Thus, Journagan's single statement that he did not sign the rejection of UIM coverage is insufficient to create a dispute of fact regarding the validity of the electronic signature bearing Journagan's name.

Plaintiff also argues briefly, and without elaboration, that Journagan testified that changes were made to his policy without his consent, which would indicate that Progressive's representatives altered the policies and signed the UIM rejection form. The testimony regarding this issue is as follows:

> Q. And would you agree with me that at some point in between Exhibits 1 and Exhibits 4, your name and Nikki's name went from being in all lowercase to being in all uppercase?
> A. Correct.
> Q. Would that have been a change that you would have made?
> A. No.
> Q. Okay. Does that lead you to believe that somebody with Progressive made some changes on your account or on your behalf?
> A. Yes, because I didn't change it.

Journagan Dep. 95. However, the evidence in the record reveals that all information on the

documents was pre-populated, that is, not input by Journagan, except for his signature in the signature block. Plaintiff fails to show how a formatting change on anything other than Journagan's signature would be an indication that Progressive's representatives, rather than Journagan himself, signed the UIM Selection/Rejection form. Plaintiff may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber, 977 F.2d at 874-75.

Finally, Plaintiff argues, again, in one sentence, that "Progressive has acknowledged that they lack any of the meta-date, electronic data and tea leaves to prove that Philip Journagan did electronically sign the UIM rejection form eleven years ago. Pl. Resp. p. 1. However, the statute does not require any specific types of evidence to prove that an electronic signature is the act of the person it purports to be. Rather, it states that the act of a person may be shown "in any manner." S.C. Code Ann. § 26-6-90(A). Thus, this argument is without merit.

In sum, the evidence in the record shows that the offer of UIM coverage to Journagan was meaningful, and that Journagan rejected said coverage, as indicated by his electronic signature on the UIM Selection/Rejection Form. As such, summary judgment in Progressive's favor is appropriate.

## V.   CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 19) be granted and this case be dismissed in its entirety.

                                   s/Thomas E. Rogers, III
                                   Thomas E. Rogers, III
                                   United States Magistrate Judge

January 9, 2025
Florence, South Carolina